UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Criminal No. 05-404 (RMC) |
| v. ) | Next Date: 7/6/06 |
| ) | |
| JORGE AGUILAR ) | |
| ) | |

**RESPONSE TO DEFENDANT AGUILAR'S MOTION TO SUPPRESS STATEMENTS AND INCORPORATED MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

**COMES NOW,** the United States of America, by and through Kenneth A. Blanco, Chief NDDS and Paul Laymon, Trial Attorney, NDDS and responds to the motion to suppress defendant Aguilar's post-arrest statements to government agents. Defendant's motion should be denied on the grounds that these statements were made after defendant Aguilar knowingly, intelligently and voluntarily signed a waiver of his Fifth Amendment rights under *Miranda v. Arizona,* 384 U.S. 436 (1966).

## FACTS

Defendant Jorge Aguilar was the deputy chief of the Guatemalan anti-narcotics agency, known as SAIA. Aguilar is an experienced police officer, having served in Guatemala as an officer for many years. In November, 2005 Aguilar and two others were indicted in the District of Columbia for conspiring to import cocaine into the United States. On November 14, 2005 he arrived in the United States, ostensibly to attend port security training. On November 15, 2005 he was arrested. After advice and waiver of his Miranda rights, he spoke to DEA agents.

Aguilar is a Spanish speaker. The extent of his knowledge of English is unknown, but he claims little or no understanding of the English language. He was advised of his rights in Spanish by a DEA agent conversant in Spanish. He waived those rights and agreed to answer questions.

Aguilar was in custody at the time he was advised of his rights. The agents were in plain clothes. Aguilar was not held at gun point, and he was not threatened or coerced. The agents were polite and businesslike. Aguilar was not under the influence of alcohol or drugs and he appeared calm and rational. At no time did he ask for an attorney or otherwise invoke his rights.

## ARGUMENT

### I) THE STATEMENTS OF DEFENDANT AGUILAR WERE MADE SUBSEQUENT TO A VALID WAIVER OF RIGHTS UNDER *MIRANDA* AND THUS WERE MADE KNOWINGLY AND VOLUNTARILY.

The basic requirement for admissibility of statements made after arrest is that at the outset of the arrest, a person must be informed in clear and unequivocal terms that he has the right to remain silent, and that statements made despite that right will be used against the individual in a court of law. *Miranda v. Arizona*, 384 U.S. 436, 467-69 (1966). The purpose of this warning is to make those who are unaware of their rights cognizant of them, as well as the consequences of waiving them. *Id*. at 469. *Miranda* removes ambiguity regarding the amount of knowledge a defendant possesses about his rights by plainly stating them. "Assessments of the knowledge the defendant possessed, based on information as to his age, education, intelligence, or prior contact with authorities can never be more than speculation; a warning is a clear-cut fact." *Id.* Once a

warning is given a defendant may choose to waive his rights under *Miranda,* and that waiver is valid when given knowingly, voluntarily and intelligently. *Id* at 444.

Proof of the validity of a waiver is the responsibility of the prosecution, and it must <u>only</u> be by a preponderance of the evidence. *Colorado v. Connelly,* 479 U.S. 157, 167 (1986). This burden is met if "the totality of circumstances surrounding the interrogation reveal both an uncoerced choice and the requisite level of comprehension" *United States v. Hough,* 944 F. Supp. 20 (D.C. Cir. 1996). Whether the "totality of circumstances" equates to a valid waiver is judged by an objective standard, that is, the "validity of any Miranda waiver must be determined by the court's inspection of the particular circumstances involved, including the education, experience, and conduct of the accused as well as the credibility of the police officer's testimony." *Pettyjohn v. United States,* 419 F.2d 651, 654-655 (D.C. Cir. 1969). So long as the above criteria are shown, and no police coercion is present, the government's burden is met and the waiver is valid.

    **a.  THE WAIVER SIGNED BY DEFENDANT AGUILAR WAS SIGNED KNOWINGLY.**

Counsel for the defense contends that the arrest of defendant Aguilar caused him to be "discombobulated" and it was during this time of confusion that a government agent took advantage of his discombobulation, read the defendant a " Spanish language document", and obtained his signature. The defense improperly characterizes the situation. One would be hard pressed to imagine an arrest experience that was not at *least* discombobulating. A person who was not under some stress upon arrest has perhaps, been arrested too many times. Additionally, the "Spanish language document" was not a non-descript document bearing no relevance, but a

translated version of the standard *Miranda* warnings read to <u>all</u> defendants, of both foreign and American citizenship.

Defendant Aguilar argues through counsel that due to his status as a foreign national he could not possibly have had a <u>full</u> awareness of the nature of the right being abandoned. While a defendant is required to be aware of his rights, a full and deep knowledge of the American system of jurisprudence is not necessary. In *Oregon v. Elstad,* 470 U.S. 298, 316 (1985) the Supreme Court stated, "This Court has never embraced the theory that a defendant's ignorance of the full consequences of his decisions vitiates their voluntariness." Further, "The Constitution does not require that a criminal suspect know and understand every possible consequence of a waiver of the Fifth Amendment privilege." *Colorado v. Spring,* 479 U.S. 564, 574 (1987). Every defendant taken into custody is read the same *Miranda* rights, regardless of age, intellectual capacity, or nationality. So long as a defendant understands the rights as read, that defendant may then waive those rights.

Defense counsel argues that Defendant Aguilar is unfamiliar with the legal system, and his native government routinely uses improper means to gain confessions from defendants. Therefore, even after he received warnings detailing in Spanish his American rights, his understanding remained insufficient. This argument is without merit. This circuit has noted that the focus,

> "…Must be on the plain meaning of the required warnings. A defendant must comprehend that he really does not have to speak; he must recognize that anything he says actually will be used by the state against him. But whether he fully appreciates the beneficial impact on his defense that silence may have- whether he fully understands the tactical advantage, in our system of justice, of not speaking- does not affect the validity of his waiver…" *United States v. Yunis,* 859 F.2d. 953, 964-965 (D.C. Cir. 1988).

The defendant in *Yunis* was of Lebanese citizenship, and spoke only Arabic. Agents arrested Yunis in connection with the hijacking of an American aircraft. Upon arrest, agents provided Yunis with an Arabic language version of the *Miranda* rights, which they read aloud to him. *Id.* at 965. The record does not show that Yunis was in any way familiar with the American legal system. Nonetheless the D.C. Circuit Court held that,

> "A waiver may be knowing and intelligent in the sense that there was an awareness of the right to remain silent and a decision to forego that right, but yet not knowing and intelligent in the sense that the tactical error of that decision was not perceived. But this is no barrier to an effective waiver for *Miranda* purposes, for it is not in the sense of shrewdness that *Miranda* speaks of intelligent waiver and thus in this context intelligence is not equated with wisdom." *Id.* at 964.

The court specifically addressed the issue of Yunis' status as an alien defendant, concluding that, "Yunis' unfamiliarity with American law did not prevent him from understanding the *Miranda* rights as they were presented to him" *Id.* at 965. Additionally an alien defendant need not be highly educated so long as his rights are given to him in a clear form. In *United States v. Bautista-Avila,* 6 F.3d 1360, 1365 (9th Cir. 1993, Defendant Armenta-Estrada was of Mexican descent, and possessed only a sixth grade education, yet the court found his waiver to be valid. Armenta-Estrada was orally informed of his rights in Spanish, and provided with a Spanish language translation of the *Miranda* warnings, which he signed. *Id.* Because Armenta-Estrada was given the warnings in his native tongue, signed the waiver, and indicated that he understood what he was doing, the court upheld the waiver as knowing and intelligent in spite of his status as an uneducated farmer. *Id* at 1366.

The 9th Circuit also held, in *United States v Rodriguez-Preciado,* 399 F.3d 1118, (9th Cir. 2005), that a waiver by a defendant with language difficulties may be valid. Defendant Rodriguez

5

claimed that his difficulty with English prevented him from making a knowing and intelligent waiver. However, the court found that because Defendant Rodriguez indicated he understood his rights before abandoning them, his waiver was valid despite any language barrier. *Id* at 1127.

Despite the defense's argument that a foreign defendant cannot become aware of his Constitutional rights from a Spanish version of the *Miranda* warnings in a "mere eleven minutes", the 5th Circuit has held that a Spanish speaking defendant may do exactly that in fifteen minutes. *United States v. Broussard,* 80 F.3d 1025, 1034 (5th Cir. 1996). In *Broussard* agents arrested Defendant Castro, who spoke no English, for his involvement in a drug trafficking organization. When Defendant Castro was arrested he was immediately informed of his *Miranda* rights in Spanish, and given the opportunity to read a Spanish *Miranda* warning card. "Only fifteen minutes elapsed between the *Miranda* warnings and Castro's offer to cooperate." *Id.* at 1034. Yet, the court found that the totality of the circumstances, which included his level of understanding, showed Castro's waiver to be valid. *Id.* There is no value in an argument that while eleven minutes was insufficient, an additional four minutes for reflection would have provided defendant Aguilar the necessary time to achieve comprehension. This is especially true in light of *Yunis*, where a waiver made <u>nine</u> minutes after arrest was deemed valid. *Yunis*, 859 F.2d at 961.

Any person who possesses the ability to understand rights presented to them may waive those rights regardless of their life experience, knowledge of the legal system, or their native tongue. The United States Supreme Court held that a 16 year old defendant effectively waived his *Miranda* rights where he consented to interrogation, had his rights fully explained, and was of sufficient intelligence to understand the rights he was waiving. *Fare v. Michael C.,* 442 U.S.

707, 725-726 (1979). While the youth had an arrest record, nothing in the opinion indicated that he had a sophisticated understanding of the legal system, only that he "clearly expressed his willingness to waive his rights and continue the interrogation." *Id.*

This argument is further supported by precedent involving American defendants who are uneducated or of below average I.Q. Often it has been held that a person of below average intelligence may waive their *Miranda* rights, so long as those rights were clearly explained to them. *United States v. Yunis,* 859 F2d. 953, 966 (D.C. Cir. 1996) citing *United States v. White*, 451 F.2d 696, 700 (5th Cir. 1971). (Defendant with a low I.Q., fifth grade education and limited reading ability effectively waived his rights).

Defendant Aguilar is not an uneducated farmer. He is a rational, intelligent and relatively sophisticated man. He is not a minor; he is an adult, with a family and children of his own. He is not merely a law enforcement officer; he held a position as second in command of the Guatemalan SAIA, which is the equivalent of the United States DEA. If defendants who speak no English, have little or no education, and little or no experience with the criminal justice system can understand their rights, so could defendant Aguilar. If their waivers were knowing and intelligent then it follows that defendant Aguilar's was as well. Based on the circumstances here, Defendant Aguilar was presented with a clear, correct, translation of those rights. Defendant Aguilar's age, level of education, and background in law enforcement, render him more than able to understand and reflect in eleven minutes.

Thus, despite his status as a foreign national, and despite his limited knowledge of the American criminal system, defendant Aguilar was completely and entirely capable of fully comprehending the translated warning which provided clearly and unequivocally that he did not

have to talk if he did not wish to, and further that if he chose to waive that right, his statements would be used against him.

### b. THE WAIVER SIGNED BY DEFENDANT AGUILAR WAS SIGNED VOLUNTARILY.

The defense in its motion argues that the voluntariness requirement was not met because defendant Aguilar was required to be advised of, read, understand, and waive his rights in eleven minutes. Defense argues that because of the insufficient time it was not possible that defendant Aguilar's waiver was voluntary. Nothing about the period of time suggests the requisite improper coercion of a waiver by the agents.

The time it took defendant Aguilar to make a decision regarding his rights is not particularly relevant to the *Miranda* requirement of voluntariness. "The Fifth Amendment privilege is not concerned with moral and psychological pressures to confess emanating from sources other than official coercion." *Colorado v Connelly,* 479 U.S. 157, 170 (1986) citing *Oregon v, Elstad*, 470 U.S. 298, 305 (1985). Thus, the focus is on official coercion, not how long it took to waive his rights.

The Defendant in *Connelly* confessed to murder while in a state of psychosis, later claiming to have been motivated by the voice of God. *Connelly,* 479 U.S. 157 (1986). The Supreme Court of Colorado found this confession to be involuntary. The U.S. Supreme Court reversed finding that the decision, "…fails to recognize the essential link between coercive activity of the State, on one hand, and a resulting confession by a defendant on the other." *Id* at 165. Further, "We hold that coercive police activity is a necessary predicate to the finding that a

8

confession is not voluntary within the meaning of the Due Process Clause of the Fourteenth Amendment." *Id* at 166.

The arrest of Defendant Aguilar was not a flustered and confusing event. He was arrested upon arrival at his hotel in a businesslike and non aggressive manner. Agents treated him with as much diplomacy as the situation afforded. When presented with the *Miranda* warnings in Spanish, defendant Aguilar was under arrest, but he was not forced to read them as quickly as he possibly could. If Defendant Aguilar signed the waiver at 2:11pm, eleven minutes after his arrest, it was because *he* decided he was ready to sign it, not because eleven minutes was the cut-off point. Defendant Aguilar, as previously stated, is an intelligent, educated official who is perfectly capable of deciding when he understands information given to him.

So long as a defendant was not "worn down" by some sort of trickery or deceit or some other intimidation used in questioning then the statements made by a defendant do not fall within the abuses *Miranda* sought to prevent. *Fare v. Michael C.,* 442 U.S. at 726-727 (1979). There simply was no police coercion here of any kind, and under the circumstances, his statements were made voluntarily.

## **CONCLUSION**

For the reasons stated above, the custodial statements made by defendant Aguilar should be admitted and the motion to suppress should be denied.

       Respectfully Submitted,


_____
Paul W. Laymon
Trial Attorney
Narcotic and Dangerous Drugs
Department of Justice, Suite 8414
1400 New York Avenue, N. W.
Washington, DC 20005
Phone       202-514-1286
Facsimile    202-514-1483

**CERTIFICATE OF SERVICE**

    I HEREBY CERTIFY that on this 30th day of June 2006, I caused a true and correct copy of the foregoing Response to Defendant Aguilar's Motion to Suppress Statements and Incorporated Memorandum and Authorities in Support Thereof to be delivered to the parties in this case via electronic case filing.

_____
Paul W. Laymon