UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES | : | |
| | : | Case No. 05-CR-404(2) (RMC) |
| *v*. | : | Trial Date: 8/21/06 |
| | : | |
| JORGE AGUILAR | : | |

## JOINT PRE-TRIAL STATEMENT

In accordance with the Court's July 21, 2006, Standing Order for Joint Pre-Trial Statement, the parties have compiled and submitted the following Joint Pre-Trial Statement. Objections thereto, if any, follow in italicized font.

A.     **Neutral Statement of the Case**

In 2005, the defendant, Jorge Aguilar Garcia, was the executive officer/deputy chief of the federal anti-narcotics law enforcement agency in Guatemala. This agency, the *Servicio de Analisis e Informacion Antinarcoticos*, was known more simply as SAIA. The SAIA had the authority to investigate drug trafficking crimes in Guatemala, and also had officers stationed at the sea port in Santo Tomas, Guatemala, who were responsible for inspecting containers coming through the port. SAIA officers at the port focused on inspecting containers for drugs, such as cocaine from Colombia, which often came through the port, hidden in containers of one kind or another. As the deputy chief of SAIA, the defendant Jorge Aguilar Garcia had supervisory authority over the SAIA employees at the port of Santo Tomas. (*Defendant Aguilar objects to the mention of narcotics coming from Colombia and requests that the only mention be that SAIA officers' duties included inspecting shipping containers coming through the Port of Santo Tomas for narcotics, such as cocaine.*)

Codefendants Adan Castillo Aguilar (no relation to the defendant Jorge Aguilar Garcia) and Rubilio Orlando Palacios were also senior anti-narcotics officials with SAIA. Adan Castillo was the chief of SAIA, and the immediate supervisor of the defendant Jorge Aguilar Garcia. Adan Castillo also exercised supervisory authority over the SAIA employees at the port of Santo Tomas. Rubilio Orlando Palacios was the Chief of Security for SAIA at the port of Santo Tomas, and was the SAIA employee at the port who decided what containers to inspect. Palacios reported to the defendant Jorge Aguilar but also maintained some contact with Adan Castillo.

The second superseding indictment charges the defendants with participating in two different conspiracies to import cocaine into the United States from Guatemala. Generally, defendant Jorge Aguilar is charged in counts one and two with conspiring with Castillo and Palacios, from in or about July 2005 to on or about November 16, 2005, to import more than five kilograms of cocaine into the United States from Guatemala, Mexico, and elsewhere. Counts one and two involve the same conspiracy, but allege violations of different United States statutes. Counts three and four charge defendant Jorge Aguilar with conspiring with others not named to distribute more than five kilograms of cocaine knowing and intending that it would be imported into the United States from Guatemala and elsewhere. This conspiracy is alleged to have started on or about August 1, 2005 and ended on or about November 20, 2005. Counts three and four involve a different conspiracy than is alleged in counts one and two, and also allege violations of two different United States statutes. (*Defendant Aguilar objects to the government proceeding on two separate conspiracies that involve the same people, the same time frame, the same location, the same drugs and the same methods.*)

**B.     Proposed Voir Dire**

The parties have no objection to the Court's standard questions as noted in the Standing Order.  However, the following additional requests are made:

<u>Additional Government Requests</u>

*None indicated as of the time of this filing.*

<u>Additional Defense Requests</u>

1. "An indictment is not evidence, and . . ." (to be inserted at the beginning of the third sentence under Public Question number 1).

2. "As you have been informed, the defendant has been indicted on several different counts.  You will be instructed that you must consider the evidence presented and determine the guilt or innocence of the defendant as to each charge separately.  Would you have difficulty applying that principle? (to be inserted after current Public Question number 1).

3. Every defendant in a criminal case has the absolute right not to testify, and if a defendant decides not to testify, you cannot in any way hold that against him or consider his decision not to testify in deciding whether the government has proven that he is guilty.  Would you be able to accept and follow this principle of law? (to be inserted after Public Question number 1).

4. Because the government has the burden of proof, a defendant is not required to call any witnesses.  Would the decision by the defendant not to call any witnesses cause you to conclude that he is guilty?  (to be inserted after Public Question number 1).

5. "Each defendant is entitled to be judged by the jury as if he were on trial alone. You will be instructed that you must consider the evidence presented as to each defendant separately and render a separate verdict as to each defendant based only on the evidence presented relating to that defendant. Would you have difficulty in considering the evidence against each defendant separately, as if that defendant were on trial alone?" (to be inserted after current Public Question number 1; and only in the event more than one defendant is tried).

6. "Is there anyone who feels that they might have any difficulty being fair and impartial in this case due to the race or ethnicity of anyone who is involved in this case?" (to be inserted after current Public Question number 12).

7. "If you came to the conclusion that the government had not proven the defendant guilty beyond a reasonable doubt, but you found that that majority of your fellow jurors believed him guilty, would you compromise your belief and change your verdict merely because you were in the minority and for no other reason?" (to be inserted after current Bench Question F).

**C.   Proposed Jury Instructions**

See Exhibit A.  Defendant reserves the right to request additional instructions upon completion of the case.

**D.   Expert Witnesses**

The government may call the following as expert witnesses:

Roxanna Araceli Rivera and Roberto Alfonso Castillo are forensic chemists employed by the Ministerio de Publico in Guatemala.  They each possess a bachelor's degree from the university in Guatemala, received extensive on the job training with their agency, and

have tested thousands of samples of controlled substances, particularly cocaine hydrochloride. Their laboratory's instrumentation and procedures are very similar to the instruments and procedures employed by the DEA drug labs. Like the DEA, the Guatemalan national crime lab uses the gas chromatograph-mass spectrometer to confirm the identity of a suspected controlled substance. In this particular case, Ms. Rivera tested the cocaine seized from the search of the SAIA headquarters and Mr. Castillo tested the cocaine seized from the port. They will testify to the manner in which they received the substances to be tested, how they tested the substances, and what their results were. As previously disclosed, two of the 19 kilograms seized from Adan Castillo's office were positive for cocaine and a sampling from 24 of the 997 kilograms seized at the Port of Santo Tomas were positive for cocaine. (*Defendant Aguilar objects to these purported experts to the extent that their curriculum vitae have not been disclosed to the defense. Additionally, the late notice of these experts prevents the defense from obtaining information to challenge these individuals' testimony or to challenge their credentials.*)

Erwin Giovanni Castro is a drug prosecutor ("fiscal") employed by the Attorney General of Guatemala. He possesses a law degree from the university in Guatemala, and is licensed to practice law in Guatemala. He is the primary Guatemalan legal advisor and liaison to the DEA Task Force in Guatemala. He would testify that Guatemalan law does not permit Guatemalan police to work covertly or undercover, and that any evidence gained from any covert or undercover operation would be inadmissible in a criminal court in Guatemala. (*Defendant Aguilar objects to this purported expert to the extent that his curriculum vitae has not been disclosed to the defense. Additionally, the late notice of this expert prevents the defense from seeking information to counter his testimony or to challenge his credentials. Further, defendant*

*objects to this witness' testimony as a purported expert on Guatemalan law or investigative procedure.*)

<u>DEA Special Agents William Brown and Michael Johnson</u> would testify that Guatemala is a transit point for Colombian cocaine destined for the United States.  Guatemala shares a border with Mexico and is located south of Mexico and north of Colombia.  Given the increased Mexican vigilance in seeking to interdict cocaine coming into Mexico and given the lack of aggressive drug interdictions in Guatemala, Colombian cocaine destined for the United States is increasingly being routed through Guatemala.  Cocaine routed through Guatemala can reach the US by transiting Mexico or the Caribbean, or by going directly to the United States.  Cocaine destined ultimately for Europe would not be routed through Guatemala, but instead would be shipped west towards Africa from Venezuela or the north coast of Colombia.   Both SA Brown and Johnson have served in the DEA for more than five years, and each has extensive experience in Guatemala.  SA Johnson has lived and worked in Guatemala for the past four years, while SA Brown  has extensive experience in Guatemala from his DEA assignments in Jacksonville, FL and Chantilly, VA.  (*Defendant Aguilar objects to the testimony of Agents Brown and Johnson to the extent that the government seeks to introduce evidence of cocaine shipments originating from Colombia or elsewhere.  Defendant is not aware of any evidence indicating that the cocaine originated in Colombia, was being shipped by anyone in Colombia or that it had any other connection to Colombia.  Although Colombia may be the world's principal source of cocaine, there are other sources of the narcotics, e.g., Peru, Bolivia, Ecuador.*)

In addition, the government may call Michael Garland, a retired DEA supervisory special agent.  His testimony would be essentially the same as the testimony outlined above from SA's Brown and Johnson.  Garland retired after almost 30 years of experience with DEA, much

of that having been spent in supervisory positions in various Central American and South American nations.  (*Defendant object to this witness for the same reasons mentioned in the preceding paragraph*).

 **E.** **Motions in Limine**

  None contemplated at this time.

 **F.** **List of exhibits**

  <u>See</u> Exhibit B.

 **G.** **Stipulations**

  None agreed to at this time.

 **H.** **Proposed Verdict Form**

  <u>See</u> Exhibit C.

  **WHEREFORE**, the parties hereby submit this Joint Pre-Trial Statement.

Dated: Washington, DC
  August 14, 2006      Respectfully Submitted,

            A. Eduardo Balarezo (Bar No. 462659)
            400 Fifth Street, N.W.
            Suite 300
            Washington, D.C. 20001
            (202) 639-0999 (tel) / (202) 783-5407 (fax)

            *Counsel for Defendant Aguilar*

            Paul W. Laymon, Esq.
            Michael C. Mota, Esq.
            Trial Attorney
            Narcotic and Dangerous Drugs
            Department of Justice, Suite 8414
            1400 New York Avenue, N. W.
            Washington, DC 20005
            (202) 514-1286 (tel) / (202) 514-1483 (fax)

            *Counsel for the government*