UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES** | : | |
| | : | Case No. 05-CR-404(2) (RMC) |
| *v.* | : | |
| | : | |
| **JORGE AGUILAR** | : | |

**DEFENDANT'S OPPOSITION TO GOVERNMENT'S
MOTION TO ALLOW WITNESS TO USE PSEUDONYM;
AND MOTION TO EXCLUDE WITNESS' TESTIMONY**

Defendant, Jorge Aguilar ("Aguilar"), by and through undersigned counsel, respectfully submits his opposition to the government's Motion to Allow Witness to Use Pseudonym and Motion to Exclude Witness' Testimony. In opposition to the government's motion and in support of his own motion, Mr. Aguilar states as follows:

**FACTS**

In its motion, the government seeks leave of the Court to present a long-time informant under a pseudonym. The government notes that the "informant continues to work for the DEA in several current investigations" and that disclosure of the "informant's true name, obtained from trial testimony, would heighten security risks for the informant and his family." (Gov. Motion at 1). In particular, the government is concerned that press coverage of the trial would disseminate the witness' name in Central America.

The government notes that it "is revealing the informant's true name to the defendant, through counsel." (Gov. Motion at 1). It is Mr. Aguilar understands that the government intends to disclose the informant's name to the defense at the motions hearing scheduled for August 17, 2006, a mere four days prior to trial. During a telephonic conference on August 14, 2006, the government disclosed to the defense that the informant has been paid

approximately $1,000,000 (one million dollars) by the DEA for his services as an informant and that DEA agent Wim Brown, the case agent in this matter, has sponsored the informant for a "bonus" payment of as much as another $1,000,000 (one million dollars) for his good services. Additionally, during the same conference, the government disclosed that the informant is a former Guatemalan military officer who has admitted to trafficking in narcotics in the past.

## ARGUMENT

The Confrontation Clause of the Sixth Amendment guarantees the right of an accused in a criminal prosecution "to be confronted with the witnesses against him." U.S. Const. amend. VI; *Smith v. Illinois*, 390 U.S. 1229, 131 (1968). The essential purpose of confrontation is to provide the defendant with the opportunity to cross-examine. *See Davis v. Alaska,* 415 U.S. 308, 315 (1974). While a defendant is entitled to an opportunity to cross-examine and impeach the testimony of a witness, the Confrontation Clause does not guarantee "cross examination that is effective in whatever way and to whatever extent, the defense might wish." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986); *United States v. McGlory,* 968 F.2d 309, 343 (3d Cir.), *cert. denied,* 506 U.S. 956, (1992). The trial court may limit defense counsel's cross-examination "based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive, or only marginally relevant." *Van Arsdall,* 475 U.S. at 679. The scope and extent of cross-examination is within the sound discretion of the trial judge. *See United States v. Rockwell,* 781 F.2d 985, 988 (3d Cir.1986).

    **A.** **The Government Has Failed to Show Actual Danger to the Informant to Justify Use of a Pseudonym**

In *Smith v. Illinois,* 390 U.S. 129 (1968), the Supreme Court addressed a case in which the principal witness for the prosecution testified under a false name and did not provide an address or other indication of his residence. The case involved a drug deal in which only the

2

defendant and the anonymous witness had first hand knowledge of the transaction.  Thus, "the only real question at trial . . . was the relative credibility of the [defendant] and the prosecution witness." *Id.* at 130.  When defense counsel sought to elicit the witness' name and address on cross-examination, the court sustained the prosecution's objections to the questions.  The Supreme Court stated that:

> [W]hen the credibility of a witness is at issue, the very starting point in exposing falsehood and bringing out the truth through cross examination must necessarily be to ask the witness who he is and where he lives.  The witness' name and address open countless avenues of in-court and out-of-court investigation.  To forbid this most rudimentary inquiry at the threshold is effectively to emasculate the right of cross-examination itself.

*Id.* at 131 (internal quotations omitted).  The Court went on to quote *Alford v. United States,* with approval.

> It is the essence of a fair trial that a reasonable latitude be given the cross-examiner, even though he is unable to state to the court what facts a reasonable cross-examination might develop.  Prejudice ensues from a denial of the opportunity to place the witness in his proper setting and put the weight of his testimony and his credibility to a test, without which the jury cannot fairly appraise them.

*Id.* at 132 (quoting *Alford v. United States,* 282 U.S. 687 (1931)).  The Court went on to conclude that preventing the defendant from cross-examining the witness as to his proper name and address violated the defendant's Sixth Amendment right to confront the witnesses against him.  *Id.* at 133.

A well recognized exception to the rule laid down in *Smith* exists.  Courts have consistently allowed witnesses to withhold their name, address, or place of employment where revealing that information would place the witness in danger.  *See e.g., Smith,* 390 U.S. at 134-35 (White, J. and Marshal, J. concurring) (recognizing safety of witness as proper ground for limiting cross-examination).  *Accord, Caldwell v. Minnesota,* 536 F.2d 272, 273-74 (8th Cir.1976); *McGrath v. Vinzant,* 528 F.2d 681, 683-84 (1st Cir.), *cert. denied,* 426 U.S. 902

3

(1976); *United States v. Cosby,* 500 F.2d 405, 407 (9th Cir.1974); *United States v. Ellis,* 468 F.2d 638, 639 (9th Cir.1972); *United States v. Alston,* 460 F.2d 48, 51-52 (5th Cir.), *cert. denied,* 409 U.S. 871 (1972); *United States v. Persico,* 425 F.2d 1375, 1384 (2d Cir.), *cert. denied,* 400 U.S. 869 (1970); *United States v. Baker,* 419 F.2d 83, 87 (2d Cir.1969), *cert. denied,* 397 U.S. 971 (1970); *United States v. Palermo,* 410 F.2d 468, 472-73 (7th Cir.1969).

Withholding the witness' true name may be appropriate in some cases, but should be justified on the record. *See e.g., Smith,* 390 U.S. at 134-35 (White, J. and Marshal, J. concurring) (suggesting that Government or witness should come forward with some showing justifying need to withhold information); *Palermo,* 410 F.2d at 472 (finding that Government bears the burden of proving the existence of a threat to the witness); *Ellis,* 468 F.2d at 639 (adopting procedure articulated in *Palermo* whereby Government must articulate substantial reasons to withhold information to protect witness' safety); *Caldwell,* 536 F.2d at 273-74 (recognizing exception to *Smith* where threat to safety of witness supported by the record). *See also United States v. Fenech*, 943 F. Supp. 480 (E.D. Pa. 1996) (granting new trial where government failed to make showing of actual danger to witness who testified under pseudonym).[1]

In the instant case, the only assertion made by the government regarding the informant' safety is that "[p]ress reports of the informant's true name, obtained from trial testimony, would heighten security risks for the informant and his family." (Gov. Motion at 1). However, the government's motion contains nothing to suggest that the informant has been threatened and is void of any indication that the informant is in danger. Surely, in the ten years that the informant has been working for the DEA it occurred to the government that his name

---

[1] In the interest of full-disclosure to the Court, and in an effort to conserve expenditure of time, this opposition has borrowed heavily from the opinion in *Fenech*.

4

would be disclosed publicly and that his gig would be up.  The mere fact that the informant is continuing to work for the DEA in several current investigations, and the government's obvious desire to maintain his services in those investigations cannot be sufficient to trump Mr. Aguilar's right to openly and publicly confront his accusers.

      **B.**  **The Government's Late Disclosure of the Informant's Information Prejudices Mr. Aguilar's Defense and Informant's Testimony Should be Excluded at Trial**

The government disclosed the payments to the informant and a vague description of his background on Augusts 14, a mere week before trial.  Additionally, even now the government has not disclosed the informant's name to the defense.  Given that the informant is based in Guatemala, the government's late and inadequate disclosures do not allow the defense any ability to conduct a meaningful investigation of the informant.  This is not the typical case where a witness is identified at trial and the defense is able to conduct quick investigations at the local courthouses to locate impeaching information on the witness; or can interview witnesses that may know the witness from the neighborhood.  Days before trial, the government in effect has said, "this is what we are telling you about the informant; make of it what you can."

The cases cited favorably by the government in its motion to use a pseudonym in actuality support Mr. Aguilar's motion to exclude the witness' testimony.

In *Clark v. Ricketts*, 958 F.2d 851 (9th Cir. 1991),  "[p]rior to trial, the government disclosed John Doe's true name and felony record to Clark.  The defense had every opportunity to discover material which might be used to impeach Doe's credibility. . . . In the present case, Clark knew John Doe's true name and his felony record well in advance of trial.  This information provided Clark with the "avenues of in-court examination and out-of-court investigation" which the accused was denied in *Smith v. Illinois*."  In this case, the government

has made half-hearted disclosures days before trial, thus preventing the defense any meaningful investigatory opportunities relating to the informant.

In *United States v. Fuentes*, 988 F. Supp. 861 (E.D. Pa. 1997), the court granted a defense motion to disclose the informant's name and the government moved for reconsideration. In denying the government's motion, the court noted that although the government had provided highly detailed information to the defense, it was still insufficient and the government must disclose the informant's name. Although in this case the government is not seeking to withhold entirely the informant's name, the government's late and meager disclosure of information regarding the informant

> . . . forecloses any possibility of defendants' meaningful investigation into [the informant's] background, and it requires the defendants to rely exclusively on the Government for information about [the informant]. It also leaves the defense with no way of testing the veracity or completeness of the Government's disclosures. This complete reliance on the prosecution is . . . inimical to our adversary process and to the checks on government prosecution embedded in our constitutional framework. This complete reliance also implicates one of *Smith* 's guiding principles, *i.e.,* that the Confrontation Clause requires that the defendants have the opportunity to put the witness' credibility to a fair test.

*Fuentes*, 988 F. Supp. at 865. The Government's late disclosure of the identity of the witness and information related to him effectively forecloses that opportunity. *Id.*

In this case, Mr. Aguilar has been detained awaiting trial for almost a year. The government has been in the possession of the informant's information for at least ten years. For the government to at this late date propose to disclose the informant's name and to provide vague and unspecific information related to the informant leaves Mr. Aguilar in the position of either accepting the government's word about who the informant is and "winging it" at trial when cross-examining the informant, or seeking a delay of the trial in order to conduct further investigation. Either option prejudices Mr. Aguilar's defense because he should not have to rely

6

solely on the government's representation of the who the witness is and should not be forced to waive his speedy trial rights as a result of the government's withholding of information.[2]

As the *Fuentes* court further explained

> The Government contends that [the extensive information disclosed to the defense] is a sufficient surrogate to revealing the identity of the informant, and that it provides the basis for meaningful cross-examination consistent with the Confrontation Clause.  We disagree.  While these disclosures certainly assist the defense because they provide impeachment evidence, the failure to reveal [the informant's] true name still forecloses "countless avenues of in-court examination and out-of-court investigation." *Smith, 390 U.S. at 131*.  These disclosures also do not alter the Government's sole control over the informational flow and the defendants' inability to test the veracity or completeness of the Government's disclosures.  Furthermore, the defense also has no way of testing [the informant's] reputation for truthfulness (or lack thereof) in his community.  *See* Fed. R. Evid. 608.  Also foreclosed is the defendants' ability to investigate possible prior bad acts here and in [informant's native country] which would impugn his veracity.  *See id.*  In sum, even with these disclosures [the informant] remains only who the Government says he is, and as for his life of at least thirty years before 1981, he remains largely a phantom.

*Fuentes*, 988 F. Supp. at 865 - 866.  Again, although the government in this case is not seeking to withhold the informant's name, the government's proposal and late disclosure of information causes the defense to suffer from the same infirmities described in *Fuentes*.  For these reasons, the Court should exclude the informant's testimony at the trial of this case.

WHEREFORE, for the foregoing reasons and any others that may become apparent to the Court, Mr. Aguilar respectfully requests that the government's Motion to Allow Witness to Use Pseudonym be DENIED and that his Motion to Exclude Witness' Testimony be GRANTED.

---

[2] The Court has excluded time under the Speedy Trial Act on at least three occasion, December 2, 2005 (excluding the period from December 2, 2005 to January 25, 2006) and January 25, 2005 (excluding the period from January 25, 2006 to March 24, 2006).  The ECF docket does not indicate that further time was excluded.  Mr. Aguilar has asserted his Speedy Trial rights and is not now waiving his rights.

Dated: Washington, DC
      August 15, 2006    Respectfully submitted,

**LAW OFFICE OF A. EDUARDO BALAREZO**


By: _____
A. Eduardo Balarezo (Bar # 462659)
400 Fifth Street, NW
Suite 300
Washington, DC  20001
(202) 639-0999

*Attorney for Defendant Jorge Aguilar*

8

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 16th day of August 2006, I caused a true and correct copy of the foregoing Defendant Aguilar's Opposition to Government's Motion to Allow Witness to Use Pseudonym; and Motion to Exclude Witness' Testimony to be delivered to the parties in this case via Electronic Case Filing.

_____
A. Eduardo Balarezo