UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES** : | |
| : | Case No. 05-CR-404(2) (RMC) |
| *v*. : | |
| : | |
| **JORGE AGUILAR** : | |

### DEFENDANT'S MOTION TO SEVER DEFENDANTS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

Defendant Jorge Aguilar ("Aguilar"), by and through counsel, respectfully moves the Honorable Court pursuant to Fed. R. Crim. P. 14, to sever the defendants in this case and to be tried separately from co-defendant Adan Castillo. As grounds for his Motion, Mr. Aguilar states as follows:

### FACTS

1. At the time of his arrest, Aguilar was second in command of the Guatemala antinarcotic agency SAIA, the functional equivalent of the Drug Enforcement Administration, and reported directly to Adan Castillo, his co-defendant. The government has charged Aguilar in a four-count indictment alleging Conspiracy to Import Five Kilograms or More of Cocaine into the United States (Counts 1 and 3) and Conspiracy to Distribute Five Kilograms or More of Cocaine Knowing that the Cocaine Would be Imported into the United States (Counts 2 and 4). Counts 1 and 2 refer to an alleged conspiracy involving Aguilar and co-defendants Castillo and Palacios, and lasting from on or about July 2005 to November 16, 2005. In this conspiracy, the three defendants are said to have plotted with a government informer to import approximately 2000 kilograms of cocaine powder into the United States.

2. Counts 3 and 4 refer to an alleged conspiracy involving the same codefendants, and lasting from on or about August 1, 2005 to November 20, 2005. In this second conspiracy, the government alleges that the codefendants conspired with actual narcotics traffickers to allow a shipment of 2000 kilograms of cocaine to pass through the Port of Santo Tomas then onto the United States.

3. Aguilar has served on the government notice that he intends to use a defense of public authority. At the suppression hearing held on August 17, 2006, DEA agent Bryan Dodd testified that after his arrest, Castillo stated that he, Aguilar and Palacios were conducting an undercover operation targeting two Colombians and acknowledged receiving cash from the Colombians during the investigation. This statement by Castillo is directly on point with Aguilar's proposed defense.

4. After review of the evidence and consultation with Aguilar, it is Aguilar's well founded belief that there exists a *bona fide* need to call Castillo as a witness on his behalf at trial. Aguilar understands that Castillo's testimony will be exculpatory as it relates to Aguilar in that Castillo can testify that Aguilar was acting under Castillo's authority during the time of the alleged conspiracies and, in fact, was conducting a law enforcement investigation. Additionally, it is Aguilar's belief that Castillo would testify on his behalf if Castillo did not have to incriminate himself as he would were this case to proceed to trial in its current posture.

**ARGUMENT**

Rule 14 of the Federal Rules of Criminal Procedure governs when a trial judge has discretion to sever defendants. Under Rule 14, if the joinder of defendants "appears to prejudice a defendant . . . , the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Fed. R. Crim. P. 14(a).

The Supreme Court has defined "prejudice" in this context to be a "serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Zafiro v. United States, 506 U.S. 534, 539, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993), *quoted in* United States v. Edelin, 118 F.Supp.2d 36, 41 (D.D.C. 2000). Thus, the primary element that this Court must examine when determining whether severance would be appropriate is whether joinder would result in a violation of the constitutional fair trial rights of a defendant. See United States v. Spitler, 800 F.2d 1267, 1271 (4th Cir. 1986).

Although the concerns of judicial efficiency are important, the trial judge must be careful to examine any potentially prejudicial effects of joinder against each defendant. See United States v. Applewhite, 72 F.3d 140, 144 (D.C.Cir.1995) (per curiam) (trial court must balance interest of judicial efficiency against risk of prejudice to defendant). When a defendant claims that joinder will result in prejudice, the trial judge is entrusted with the discretion to determine whether prejudice exists, and the appropriate remedy for any prejudice that is found. See United States v. Lane, 474 U.S. 438, 449 n. 12 (1986) (Rule 14 gives trial judge discretion to determine whether prejudice from joinder of offenses or defendants warrants severance; appellate court will review on "abuse of discretion" standard); United States v. Clark, 184 F.3d 858, 866 (D.C.Cir.1999) (applying "abuse of discretion" standard to denial of severance). Not only must the trial judge carefully examine the defendants' claims of improper joinder at the outset of the proceedings, the trial judge has a "continuing duty to monitor the appropriateness of joinder of counts and defendants" and the possibility of prejudice against any defendant. United States v. Edelin, 118 F. Supp.2d 36, 40 (D.D.C.2000) (citing Schaffer v. United States, 362 U.S. 511, 516 (1960)).

The most common remedy is severance from other defendants. Severance is a proper remedy when the defendant has met the burden of showing that joinder would violate his constitutional rights. See United States v. Edelin, 118 F.Supp.2d 36, 41 (D.D.C.2000) (citing United States v. Spitler, 800 F.2d 1267, 1271 (4th Cir.1986)). A claim of prejudice may be substantiated by a showing that a defendant requires the testimony of a co-defendant in order to support his defense. In order to claim that severance is appropriate because of one defendant's need for another defendant's testimony, the moving defendant must make a showing of a *bona fide* need for the testimony, the substance of the desired testimony, the exculpatory nature and effect of the testimony, and the likelihood that the co-defendant would actually testify. See United States v. Ford, 870 F.2d 729, 731 (D.C.Cir.1989).

### I.     Aguilar Has a Bona Fide Need for Castillo's Testimony

In this case, after review of discovery and testimony, it is apparent that the overwhelming bulk of the government's case is made up of the testimony of a cooperator. That cooperator is believed to be prepared to testify that Aguilar was somehow involved with Castillo and Palacios in a narcotics Conspiracy. The only person who can testify that Aguilar was acting under orders from Castillo is Castillo himself. His testimony on behalf of Aguilar is absolutely needed for Aguilar's defense.

### II.    The Substance of the Desired Testimony

The testimony of Agent Dodd indicated that Castillo could state that Aguilar was acting in his capacity of a law enforcement officer and under Castillo's orders. Thus, Castillo's testimony is clearly relevant to the trial and Aguilar would not be able to obtain that evidence from any other source, without himself surrendering his constitutional right to remain silent.

### III.  The Exculpatory Nature and Effect of The Testimony

Castillo's testimony would tend to exculpate Aguilar because he would testify that Aguilar was taking part in a drug investigation and not committing a crime. Castillo's testimony would be a powerful counter to the cooperator's testimony and would not be available to Aguilar from any other source.

### IV.  Likelihood that Castillo Would Testify

Aguilar understands that Castillo would testify on Aguilar's behalf, so long as by testifying, Castillo does not inculpate himself as he would have to do were this case to proceed jointly with Aguilar's.

If this matter were to proceed to trial with the joined defendants, Aguilar would be compelled to testify to rebut the testimony of the cooperator, thus violating his Fifth Amendment Rights. Because Castillo would be a defendant in the same trial with his own liberty at stake, he would be placed in a position to either waive his Fifth Amendment rights and testify, or not to testify at all. Either way, Aguilar's substantial constitutional rights would be violated because he would be prohibited from presenting exculpatory evidence in his defense. Thus, the Court must sever the trial of the defendants so that Aguilar can call Castillo as a witness at trial.

      **WHEREFORE,** for the foregoing reasons, Defendant Aguilar respectfully requests that this motion be **GRANTED**.

Dated: Washington, DC
      August 17, 2006                    Respectfully submitted,

                                            **LAW OFFICE OF A. EDUARDO BALAREZO**

                                            _____
                                            A. Eduardo Balarezo (Bar No. 462659)
                                            400 Fifth Street, N.W.
                                            Suite 300
                                            Washington, D.C. 20001
                                            (202) 639-0999 (tel)
                                            (202) 783-5407 (fax)

                                            *Attorney for Jorge Aguilar*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 17th day of August 2006, I caused a true and correct copy of the foregoing Defendant's Motion to Sever Defendants and Incorporated Memorandum of Points and Authorities in Support Thereof in to be delivered via Electronic Case Filing (ECF) to the parties in this case.

_____
A. Eduardo Balarezo